STATE OF DELAWARE *v*. JOHN W. LUCE ET AL.*

*Nuisance—Municipal Corporations.*

Any trade or business, carried on in a town or populous neighborhood or near a public road or highway, which produces noxious or offensive smells, to the annoyance of the neighborhood or persons traveling along the public road, is a common nuisance and indictable. It is not necessary that the smells should be injurious to health. It is sufficient if they be offensive to the senses.

The town commissioners of an incorporated town have no power to legalize a nuisance, unless specially authorized so to do by an Act of the Legislature.

Whatever deprives the citizens of pure, uncontaminated, inoffensive air is a nuisance ; and the manufacture of fish into scrap as a fertilizer is such per se.

(*Sussex, October Term, 1885.*)

INDICTMENT for a nuisance in maintaining a certain factory. The facts sufficiently appear from the charge.

*John H. Paynter*, Attorney-General, for the State:

*Jacob Moore*, for defendant:

THE COURT, COMEGYS, CH. J., charged the jury as follows:
It is sufficient for the purposes of this case to give the description of a nuisance, such as is charged in this indictment, which was adopted by this court in a case tried in the court of general sessions several years ago. It is this:
" Any trade or business, carried on in a town or populous neighborhood or near a public road or highway, which produces noxious or offensive smells, to the annoyance of the neighborhood or persons traveling along the public road, is a common nuisance and is indictable. It is not necessary that the smells should be in-

*See *Garrett v. State* (N. J.) 5 Cent. Rep. 337 ; *State, Nicoulin v. Lowery* (N. J.) *ante*, 830.

jurious to health. It is sufficient if they are offensive to the senses."
*State v. Wetherall*, 5 Harr. (Del.) 487.

It is an undisputed fact that the defendants, John W. Luce and Frank Luce, were the proprietors and owners of a factory for the manufacture of fish into oil and scrap or fertililizer—the residuum of said fish after the oil was expressed from them—at a place on the beach within about a mile and a quarter of Lewes, in this county, a town of about 2,000 inhabitants. Whether this spot was within the incorporated limits of the town does not appear; but the town and its precincts constituted the populous neighborhood requisite to comply with the description I have quoted. It was also upon two public highways, to wit; the bay shore, where the people passed and repassed in their progress up and down the water side; and the waters of the bay itself, a highway in its broadest sense. We have, then, a fish factory planted on two public highways and near a populous neighborhood, viz. : the town of Lewes.

The indictment charges that certain noxious and offensive odors arose out of the manufacture carried on by the defendants, and that the people of the said neighborhood and passers along the respective highways were subjected to the noisomeness and offensiveness of those odors, to their great damage and common nuisance. The question then is, Was there such damage and nuisance as is charged or not? If so; the defendants were properly indicted and should be found guilty; otherwise not.

Two defenses are made by the defendants to the indictment—the first, a denial of the alleged nuisance; the second, that if there were such, they are excused from making it by a lease of the premises upon which to carry on their business, granted them by the town commissioners of Lewes.

With respect to this latter, I have to say to you that if such an excuse could be valid, there is no evidence, so far as I am aware, that the said commissioners had power to make such a lease; and if they had, it would not protect the defendants in creating a nui-

sance (if they did create one), for the reason that no power short of an Act of the Legislature for the purpose can legalize the maintenance of a nuisance. Unless an Act incorporating a town gives the authorities there, either expressly or by necessary inference, the power to authorize a nuisance, none exists. We have not been shown the Act of incorporation of Lewes; and in the absence of such information we are warranted in saying to you that the power claimed for the corporation does not exist.

But the defendants are not therefore guilty under this indictment; that is to say, there must be proof that the manufacture at their factory, under the circumstances, operated a nuisance. From what has been proved in this case, I feel safe in saying that the manufacture of fish into scrap as a fertilizer is a nuisance *per se*— that is, of itself; as it involves, for its successful operation as conducted in this case, the exposure to the outside air of the refuse bone and flesh, that it may become dry. This requires more or less time, during all of which there is emitted an offensive odor. It is not that of boiling the fish; that has its own special smell, which it is to be presumed is not very offensive and is not sufficiently strong to pervade the air for a considerable distance; but it is that of the exposure of the scrap to the sun and air, which diffuses for long distances, as the evidence shows, an odor of fertilizers—one very offensive and disagreeable to people not accustomed to it.

Now, as the people of a community have a right, of which nothing but an Act of Assembly can deprive them, to pure, untainted, uncontaminated, inoffensive air, it follows that whatever of itself deprives them or interferes with their enjoyment of such right necessarily is, of itself, a nuisance of a public character and indictable. But it does not follow that a trade or occupation, a nuisance by itself, may not be carried on so as to be no nuisance in point of fact. If the odors do not reach a populous neighborhood or do not pervade the traveled highway there is no damage to any portion of the public and no indictable nuisance. You see at once, then, that upon the theory that this trade or business was necessarily

one attended, by bad smells, stinking odors, impregnating the air with foulness, so as to render existence uncomfortable and disagreeable, yet unless they reached the nostrils of the people of the neighborhood of the factory there cannot be said to be any violation of law.

When, with reference to an alleged nuisance, the people or citizens of a neighborhood or the public are mentioned, it does not mean all the people, or of the public, but only such considerable number of them as to show that more than a few merely are meant. No general definition can be given to denote precisely what is meant by " few" or " many," nor can any be precisely given of the limits expressed by the term " neighborhood." It is sufficient to say of the latter term that in the case of an operating nuisance, every part is in the neighborhood which is affected by it. " Few " and " many " are to be considered with reference to the surroundings. If there is a nuisance affecting a place and a very small number only are victims of it, it would be an injury to but a few ; and while they would have their separate actions for compensation in damages for the injury, there would be no public evil for an indictment.

Let me illustrate this: If one were to erect a pig pen or slaughter house or were to store fertilizers in a town, and a few people only in that immediate neighborhood were annoyed by it, there would be no indictable offense; if the annoyance extended to those generally about there, the owner would be indictable, although in point of fact only a small neighborhood of the town, for example a single square where there were many squares, was within the scope of the foul smells. If this were not so, a filthy pig sty would never be a public nuisance in a town, nor a stable badly kept, nor any other offensive object of limited range of odor. The term " public" does not mean all the people, nor most of the people, nor very many of the people of a place; but so many of them as contradistinguishes them from a few.

Now, the question in this case is this: Was any considerable

number of the people of Lewes, or of those who passed and re-passed along the highway of the bay shore and the bay itself, subjected from time to time to the discomfort of noxious, fetid air, unpleasant odors, by reason of the operations carried on by the defendants at their factory? If there were, then the defendants are guilty under this indictment and should be so found; otherwise they should be acquitted. This is a question of fact for you to decide, upon your review of all the testimony in the case. That testimony and this law I have now given you are your guide; by them you must be governed in your verdict. In considering that evidence, you should not forget that in the cross examination of almost all the defendants' witnesses who spoke of the smells they experienced in the town, they describe them as being that of fertilizers, like fertilizers, same as fertilizers, words to that effect; nor in considering the question of their offensiveness that some could not tell, as they said, whether they were the smell of pig pens or not. These witnesses, as some also of those on the part of the State, resided in all parts of the town and spoke each of his own home and experiences.

It is true that such of the defendants' witnesses as spoke of the odors resembling fertilizers said that they did not annoy them. Well, there are people in the world who are not made uncomfortable by bad smells. Living among vile odors, having insensitive olfactories, they are shielded, mercifully. But such is not the case with most men, nor with women and female children who have very acute sensibilities. The law of nuisance exists for the protection of such.

In closing I say to you that if, upon an honest, conscientious review of all the testimony, you should entertain a reasonable doubt that the offensive odors alleged came from the factory and pervaded the neighborhood, you should acquit the defendants; otherwise, you should find them guilty.

I have not thought it necessary to charge you upon the question of permanency and frequency of the offensive smells; because the witnesses did not testify to the same periods, but each with respect to those or that known to him or herself.